UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

NEW CINGULAR WIRELESS PCS, LLC,

Plaintiff,

v.

SPOTSYLVANIA COUNTY, VIRGINIA, *et al.*,

Defendants.

Civil Action No. 3:12-CV-351

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Enforce the Parties' Settlement Agreement ("Motion") (ECF No. 27) filed by Plaintiff New Cingular Wireless PCS, LLC ("Cingular"). For the reasons that follow, the Motion will be DENIED.

## I. BACKGROUND

The Motion arises in a civil action already dismissed with prejudice by this Court on April 8, 2013. In April 2012, Cingular filed a Complaint against Spotsylvania County, Virginia and the Board of Supervisors of Spotsylvania County (collectively, "County").[1] Cingular asserted two Counts for violation of certain provisions of the Telecommunications Act of 1996, 47 U.S.C. §§ 151 *et seq*., namely, 47 U.S.C. §§ 332(c)(7)(B)(iii), (B)(i)(II).[2]

The allegations of the Complaint centered on County's denial of an application by Cingular to install a new wireless telecommunications facility. Cingular had existing telecommunications antennas installed on a water tank existing on County-owned property on Route 3 ("Route 3 Property"). However, that water tank was scheduled to be decommissioned

[1] The action was originally filed in the Circuit Court of Spotsylvania County, but was subsequently removed by County to this Court.

[2] The Complaint asserted three additional counts, which were dismissed on September 10, 2012 by Judge John A. Gibney, Jr. pursuant to a motion to dismiss by County.

and razed, requiring Cingular to remove its antennas.

In order to prevent a gap in provision of wireless service, Cingular submitted an application to County requesting a permit to install a 183-foot monopole and ancillary equipment in a residential zone of the county ("Application"). Importantly, the Application only concerned Cingular's request to build a new facility on private property at 12341 Five Mile Road, Fredericksburg, Virginia ("Five Mile Road Property"). County denied the Application, prompting Cingular to file suit. Count One of the Complaint alleged that County's denial of the Application was in violation of federal law because it was not "supported by substantial evidence in a written record." 47 U.S.C. § 332 (c)(7)(B)(iii). Count Two of the Complaint alleged that County's denial of the Application constituted a *de facto* prohibition of "the provision of personal wireless services" because the water tank was scheduled to be razed and the Application represented Cingular's only means of replacing existing equipment without a gap in wireless coverage. 47 U.S.C. § 332 (c)(7)(B)(i)(II).

On November 6, 2012, the Parties consented to appear before Magistrate Judge M. Hannah Lauck for the purposes of settlement. A settlement conference was held on February 2, 2013. Thereafter, the Parties executed several documents, including a Memorandum of Understanding as to Settlement Agreement, a Settlement Proposal, and a Lease Amendment. The last of these documents modified an existing lease between Cingular and County for the Route 3 Property on which the water tank was located; the existing lease was in effect and had not been breached by either party at the time of the Lease Amendment.

The bargain struck by these documents included various obligations on the part of both Parties. County agreed to make the water tank structurally sound, to maintain the water tank at its expense, and to bring the water tank into compliance with statutory construction code and safety requirements. Such action would alleviate the need to raze the water tank, and the Parties agreed that after the water tank work was completed, Cingular could hire a structural engineer to assess the water tank's capacity to bear certain upgraded telecommunications equipment. The

Parties agreed that Cingular could seek permits to upgrade its equipment on the water tank in various ways, including addition of any equipment necessary to create a fully-launched long term evolution (LTE) facility. Finally, the Parties agreed that Cingular's lease of the water tank property would continue and extend for a term of seven years beginning on September 1, 2013, with an additional, subsequent seven year term on optional renewal.[3] Also beginning on September 1, 2013, Cingular's monthly rent under the Lease Amendment increased to $2,875.

After executing the last of these documents, the Parties filed a Stipulation of Dismissal (ECF No. 25) on April 5, 2013 signed by both Cingular and County. The Stipulation of Dismissal did not reference or recite any settlement agreement between the Parties and requested dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The Court dismissed the Complaint with prejudice by Order dated April 8, 2014 ("Dismissal Order").

Since dismissal of the Complaint, County has not completed the work listed in the Settlement Proposal and Lease Amendment, which included exterior painting, interior painting, ladder repair, balcony handrail repair, installation of a cover plate, repair of an aviation obstruction light, and installation of a padlock. Cingular has paid increased rent in compliance with the Lease Amendment since September 1, 2013. Because work has not been completed on the water tank, County has refused to consider construction drawings and a structural analysis report, which were provided by Cingular in an effort to obtain permits to install upgraded telecommunications equipment on the water tank. In February 2014, County represented to Cingular that work on the water tank cannot begin until it has received bids from engineering firms—a process that may take up to six months to complete.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," which are presumed to lack jurisdiction unless otherwise established by the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Neither [Federal Rule of Civil

[3] The original lease provided for five-year terms and payment of $1,000 per month in rent.

Procedure 41(a)(1)(A)(ii)] nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produced" a stipulation of dismissal. *Id*. Therefore, after an action has been dismissed pursuant to Rule 41(a)(1)(A)(ii), federal courts lack jurisdiction unless (1) an independent jurisdictional ground exists or (2) the exercise of ancillary jurisdiction is appropriate. A court may exercise ancillary jurisdiction to enforce a settlement agreement after dismissal in only two circumstances: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379–80.

In order for a court to retain ancillary jurisdiction to enforce its own decrees, "the obligation to comply with a settlement's terms must be expressly made part of a court's order." *Smyth v. Rivero*, 282 F.3d 268, 283 (4th Cir. 2002). This rule is "adhered to strictly," *id.* at 283 (quoting *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 273 (3d Cir. 1999)), and requires that in order to retain jurisdiction, the court must "give a clear indication that it is incorporating the terms of the agreement into that order or retaining jurisdiction" in order to have jurisdiction over an enforcement action, *id.*; *see also Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 299 (4th Cir. 2000) (holding that a provision stating, "The Court retains jurisdiction to enforce the settlement of the parties and the prior Orders in this case," satisfies the *Kokkonen* requirement to maintain jurisdiction).

## III. DISCUSSION

Cingular requests specific enforcement of, and damages for the alleged breach of, the Settlement Proposal and Lease Amendment arising out of a dispute voluntarily settled and dismissed with prejudice more than one year ago. It is well-settled that federal district courts may not enforce settlement agreements after dismissal absent an independent jurisdictional basis or the appropriate exercise of ancillary jurisdiction. *See Kokkonen*, 511 U.S. at 378; *Fairfax Countywide Citizens Ass'n v. Cnty. of Fairfax*, 571 F.2d 1299, 1304 (4th Cir. 1978). Cingular


argues both that this Court may exercise ancillary jurisdiction and, alternatively, that federal subject matter jurisdiction exists.[4] However, the Motion is not interdependent with the dismissed Complaint, and the Court did not incorporate the settlement documents into its Dismissal Order. The Court, therefore, may not exercise ancillary jurisdiction over the Motion. The Court does not otherwise have an independent jurisdictional basis to hear a breach of contract action arising from different facts than were at issue in the Complaint. Accordingly, the Court lacks jurisdiction over the matter, and the Motion must be denied.

As to the lack of ancillary jurisdiction, the Supreme Court's analysis in *Kokkonen*, 511 U.S. 375, is instructive. The *Kokkonen* Court enumerated two circumstances in which the exercise of ancillary jurisdiction would be appropriate. 511 U.S. at 379-80. As to the first, the *Kokkonen* Court found no ancillary jurisdiction existed where the original action was distinct from the settlement enforcement actions, rather than factually interdependent. *Id.* at 380. In determining that ancillary jurisdiction did not exist on this ground, the Court noted that the motion to enforce the settlement was actually a breach of contract claim, governed by state contract law and based on facts distinct from those over which the original dispute arose. *Id.*

Similarly in this case, there is no factual interdependence between the original Telecommunications Act claims and the breach of contract claim embodied in the Motion. Cingular's memoranda support this distinction by the law they cite, the relief they request, and the facts they recite. In support of the Motion, Cingular cites Virginia law for the principles of contract interpretation and breach of contract. (Pl.'s Mem. Supp. 8-9.) In contrast, the Complaint cited only federal law. Further, the relief requested by the Motion requests specific performance of two agreements—the Settlement Proposal and the Lease Amendment—as well as damages for County's alleged breach and rent abatement. (Pl.'s Mem. Supp. 10.) These are not remedies that were available under, or were requested in, the original Complaint. Most

[4] Cingular has not argued that the Parties are diverse, and the record does not indicate whether the amount in controversy would exceed the jurisdictional requirement. *See* 28 U.S.C. § 1332.

importantly, while the facts in the original Complaint concerned County's denial of the Application to build a new telecommunications facility at the Five Mile Road Property, the facts underlying the Motion concern County's alleged failure to repair the water tank on the Route 3 Property. Although the facts underlying the Motion may not have existed absent the original dispute, "breach of an agreement that produced the dismissal of an earlier federal suit" is an insufficient basis on which to rest ancillary jurisdiction. *Kokkonen*, 511 U.S. at 379. For these reasons, the Court may not exercise ancillary jurisdiction on the basis of factual interdependence between the Motion and the Complaint.

Absent factual interdependence, the *Kokkonen* Court held that ancillary jurisdiction may exist only where necessary to effectuate the court's decrees. *Id*. This requirement may be satisfied if the terms of the Parties' settlement agreement are "expressly made part of a court's order." *Smyth*, 282 F.3d at 283. However, the Dismissal Order neither included a "separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement)" nor incorporated the terms of the Parties' agreements. *Id*. at 280. Despite Cingular's contention that the Parties intended to incorporate the terms of the Parties' settlement, the Dismissal Order lacked any actual incorporation. Accordingly, the exercise of ancillary jurisdiction is not necessary to effectuate the court's decrees and, therefore, not appropriate.

Likewise, the Court has no independent basis for jurisdiction over the Motion based on the Telecommunications Act of 1996. This result is clear from the character of the Motion and analogous Fourth Circuit precedent. As previously described, the Motion itself appears plainly to be based on contract law, rather than on federal telecommunications law. In its initial memorandum, Cingular nowhere cites to the Telecommunications Act of 1996 and nowhere alleges that County's conduct constitutes a violation of that law. Only in reply to County's jurisdictional argument does Cingular assert that the alleged breach of the Settlement Proposal and Lease Amendment "ha[s] the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i). Importantly, however, Cingular bases this argument on

the current dispute—County's failure to upgrade the water tank—rather than the original dispute. Therefore, in order for the Court to properly hear and grant the Motion, Cingular implicitly asks the Court to determine both whether County has breached any agreement and also whether any such breach violates the Telecommunications Act of 1996.

Although Cingular's jurisdictional argument may be somewhat persuasive on its face, Fourth Circuit precedent indicates that there is no independent jurisdictional basis for the Motion. In a factually analogous case, the Fourth Circuit determined that it lacked an independent jurisdictional ground to enforce a settlement agreement despite the existence of federal subject matter jurisdiction in the original dispute. *See Fairfax*, 571 F.2d 1299. In *Fairfax*, the plaintiffs brought suit under federal law alleging that the existence of a disproportionate number of unpaved roads in black neighborhoods constituted racial discrimination in violation of the Constitution. *Id.* at 1300-01. The parties in *Fairfax* entered into settlement agreements requiring the defendants to pave a number of roads, thereby correcting the alleged discrimination. *Id.* at 1301. When the defendants failed to pave all the roads as agreed, the plaintiffs filed a motion seeking enforcement of the settlement agreements. *Id.* at 1302. The Fourth Circuit held, *sua sponte*, that the district court lacked jurisdiction to enforce the agreements.[5] In so holding, the Fourth Circuit rejected the proposition that the motion was more than a breach of contract claim and explicitly held that it did not arise under the laws of the United States. *Id.* at 1303.

The Motion is factually analogous to the motion at issue in *Fairfax*. As in *Fairfax*, federal subject matter jurisdiction had existed over the settled action. As in *Fairfax*, one party's failure to complete performance under the settlement agreement effectively continued or exacerbated the harm alleged in the settled action. In *Fairfax*, the violation of federal law consisted of racial discrimination, and the failure to pave all roads as required by the settlement agreement allowed

[5] Notably, the Fourth Circuit remanded the case because the district court had properly vacated the order of dismissal pursuant to Rule 60(b)(6) on motion of the plaintiffs. *Fairfax*, 571 F.2d at 1306. Cingular has not made a motion pursuant to Rule 60(b)(6) and, therefore, cannot ground jurisdiction on the same basis as the original Complaint.

the alleged racial discrimination to persist. *Id.* at 1301-02. In this case, the violation of federal law consisted of prohibition of wireless service, and the failure to fix the water tank as required by the settlement agreement allegedly allows the prohibition to persist. However, neither in *Fairfax* nor in this case is there an independent jurisdictional basis over what is, essentially, a contract dispute. *See id.* at 1306.

The cases that Cingular sites in support of its Motion do not compel a different conclusion. Although the Fourth Circuit has frequently recognized that "a district court retains inherent jurisdiction and equitable power to enforce agreements entered into in settlement of litigation before that court," *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983), this inherent power exists only until the Court enters a final order, ending the basis for federal jurisdiction, *see Fairfax*, 571 F.2d at 1304. Each of the cases cited by Cingular for this generalized proposition involved a court's acknowledgement or enforcement of either (1) a settlement agreement prior to final dismissal of the underlying action or (2) a settlement agreement over which the court had explicitly reserved jurisdiction. *See, e.g.*, *Hensley v. Alcon Labs.*, 277 F.3d 535 (4th Cir. 2002) (finding jurisdiction existed when—prior to entry of a final order—the parties disputed whether a settlement agreement had been reached); *Petty v. Timken*, 849 F.2d 130 (4th Cir. 1988) (finding jurisdiction where the court explicitly retained jurisdiction); *Ozyagcilar*, 701 F.2d 306 (finding jurisdiction existed prior to entry of a final order of dismissal). Neither justification is present in this case, making each of the cases Cingular relies on to assert jurisdiction distinguishable. Accordingly, Cingular has failed to demonstrate that the Court has jurisdiction to hear its Motion.[6]

## IV. CONCLUSION

For the foregoing reasons, the Motion will be DENIED. Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

---

[6] Because the Court lacks jurisdiction to hear the Motion, it does not reach County's alternative argument for denial, namely, that the Parties' execution of the Lease Amendment fully satisfied its obligations under the Settlement Proposal.

An appropriate Order shall issue.

/s/
James R. Spencer
Senior U. S. District Judge

ENTERED this 24th day of June 2014.